In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1233

ROOSEVELT FULLER, by his parents,
GRETTA FULLER and ROOSEVELT HARRIS, et al.,

Plaintiffs-Appellants,

v.

DECATUR PUBLIC SCHOOL BOARD OF EDUCATION
SCHOOL DISTRICT 61, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-C-2277--Michael P. McCuskey, Judge.

Argued March 28, 2001--Decided MAY 24, 2001


  Before RIPPLE, KANNE, and EVANS, Circuit
Judges.

  EVANS, Circuit Judge.  On September 17,
1999, a violent fight broke out in the
bleachers at a high school football game
in Decatur, Illinois, leaving spectators
scrambling to escape the melee. The
students involved in the fight were
members of rival street gangs--the Vice
Lords and the Gangster Disciples./1 As
so often happens these days, a bystander
caught the fight on videotape. It showed
participants punching and kicking each
other without concern for the safety of
others in the stands. Six students who
attended three different high schools in
the Decatur Public School District were
expelled from school for 2 years for
their roles in the fight. The fight and
the expulsions received considerable
media attention as well as the attention
of the Reverend Jesse Jackson and
Illinois Governor George Ryan. When the
dust settled, the original 2-year
expulsions were reduced to expulsions for
the remainder of the school year with the
students being given the opportunity to
attend an alternative high school.
Nevertheless unsatisfied, some of the
students, by their parents, brought this
action pursuant to 42 U.S.C. sec. 1983,
alleging that their constitutional rights
were violated because one of the three

school disciplinary rules they were found to have violated was void for vagueness. At trial, the district court ruled for the School District, denying the students' request for declaratory relief. The students appeal.

The students expelled were Roosevelt Fuller and Errol Bond, who attended Stephen Decatur High School; Gregory Howell and Shawn Honorable, who were students at Eisenhower High School; and Terence Jarrett and Courtney Carson, who were students at MacArthur High School. The fight in which the students were involved began on one end of the bleachers and traveled all the way to the other end. Fans were jumping over the railing, trying to get onto the track which surrounds the football field, to escape the fight. The principal at MacArthur said he had never seen a fight as bad as this one in his 27 years in education.

The Monday after the game, an investigation began at each high school to determine who was involved in the fight. The six plaintiffs were identified and suspended for 10 days pending further action of the School Board. The principals of the respective high schools each recommended that the students be expelled for 2 years. Letters were sent to the students' parents noticing a hearing date and stating that the students were charged with violating three disciplinary provisions, copies of which were attached to the letter. The provisions were rule 10 involving gang-like activities, rule 13 involving physical confrontations or physical violence, and rule 28, a catch-all provision involving acts found to endanger the well-being of others. The letters also stated that the administrators of the schools recommended the 2-year expulsions.

Each of the students had a separate hearing before Dr. David O. Cooprider, who had been the regional superintendent for Macon and Piatt Counties and who at the time was a hearing officer under contract to conduct expulsion hearings. Evidence at the hearings showed that each student was an active participant in the fight. It also showed that the students were members of the rival gangs, the Vice Lords and the Gangster Disciples, that fought that night. Accident reports

admitted into evidence showed that seven bystanders were injured. Fuller, Honorable, and Carson did not attend their hearings, and no one attended on their behalf. Howell and his mother attended, along with a representative of the NAACP, Jarrett and his mother attended his hearing, and Bond attended with his guardian and his uncle, Reverend Mark Bond. Dr. Cooprider recommended a 2-year expulsion for each student.

On October 1, 1999, the School Board held a special meeting to consider the expulsions of Fuller and Jarrett. The Board reviewed the videotape of the fight and the report of Dr. Cooprider. Two representatives from the Rainbow/PUSH Coalition (an organization identified with Reverend Jackson) addressed the Board in closed session. Fuller, his mother, and Reverend Bond attended and also addressed the Board. The Board voted to expel both students for 2 years.

On October 4, another special meeting of the Board was held to consider the recommendations regarding Howell, Bond, Carson, and Honorable. Again the Board reviewed the videotape. Howell, his mother, and Dr. Jeanelle Norman appeared and asked that Howell be allowed to with draw from school rather than having the disciplinary hearing. The request was granted. Bond, his father, and a representative of the Rainbow/PUSH Coalition addressed the Board on Bond's behalf. No one appeared for Carson or Honorable. In separate votes, the Board voted to expel Bond, Carson, and Honorable for 2 years.

On November 8, 1999, representatives of the School District met for 8 hours with representatives of the Rainbow/PUSH Coalition and Governor Ryan. That evening the School Board held an emergency meeting. Reverend Jackson addressed the Board. The Board conducted separate votes for each of the five remaining students; the result was that the length of the expulsions was shortened to last only through the remainder of the 1999-2000 school year. Because of the intervention of Governor Ryan, the students were allowed to attend an alternative education program immediately. Fuller and Howell have now graduated from high school.

The day after the emergency meeting, November 9, the students filed their complaint in the present case along with a request for a temporary restraining order or a preliminary injunction. They sought an order reinstating them to school and a declaration that the rule 10 prohibition on "gang-like activities" is void. As we stated, the students lost at trial.

In this court the students seek a ruling that the prohibition against "gang-like activity" is facially unconstitutional because it lacks clear definitions of what the prohibited conduct is. Because the expulsions were based at least in part on this rule, the students--including Howell, who claims to have standing despite withdrawing from school--contend that their due process rights were denied. Because the period of expulsion has ended, the students recognize that any remedy is necessarily limited, but they seek an order sending the case back to the district court for a determination whether expungement of the disciplinary records is an appropriate remedy. The defendants argue that Howell lacks standing, the request for expungement is inappropriately presented for the first time on appeal, and the case is moot because the rule has been changed and the expulsions are over.

Although we agree that Howell lacks standing, we are not convinced that the other students' request for declaratory relief is moot. See Powell v. McCormack, 395 U.S. 486 (1969). Nor are we convinced that the request for expungement has been waived. Although rule 10 has been changed, and while the period of expulsion is over, an expulsion of this severity can have serious consequences to the students. If the students' constitutional rights were violated, expungement might very well be an appropriate equitable remedy.

The problem for the students, however, is convincing us that their rights were, in fact, violated.

Rule 10, in place when the trouble started, prohibits students from engaging in "gang-like activities." It provides:

As used herein, the phrase "gang-like activity" shall mean any conduct engaged

in by a student 1) on behalf of any gang, 2) to perpetuate the existence of any gang, 3) to effect the common purpose and design of any gang and 4) or to represent a gang affiliation, loyalty or membership in any way while on school grounds or while attending a school function. These activities include recruiting students for membership in any gang and threatening or intimidating other students or employees to commit acts or omissions against his/her will in furtherance of the common purpose and design of any gang.

A violation of the rule is grounds for suspension or expulsion from school./2

The students argue that the phrase "gang-like activity" is unconstitutionally vague on its face. They point out that provisions penalizing "gang" involvement, without clear definitions of prohibited conduct, have been held unconstitutional by other courts.

Whatever is true of other rules, rule 10 is not devoid of standards. It delineates specific activities which are covered by the rule: recruiting students for membership in a gang, threatening or intimidating other students to commit acts or omissions against their will in furtherance of the purpose of the gang. It is different from the rule in Stephenson v. Davenport Community School District, 110 F.3d 1303 (8th Cir. 1997), which is directed at gang-related activities such as "display of 'colors', symbols, signals, signs, etc."-- activities more likely to implicate First Amendment rights. Similarly, the rule in another case the students cite, West v. Derby Unified School District No. 260, 206 F.3d 1356 (10th Cir. 2000), goes primarily to speech-related activities. On the other hand, in our case, the rule on its face and certainly as applied to these students prohibits threatening and intimidating actions taken in the name of a gang. With that in mind, we turn to the students' constitutional challenge.

A rule, regulation, or law can be facially unconstitutional under two different theories. First, laws that inhibit the exercise of First Amendment rights can be invalidated under the overbreadth doctrine. Broadrick v. Oklahoma, 413 U.S. 601 (1973). The

students do not proceed under this theory. Rather, they rely on the second, which is that even if a law does not reach a substantial amount of constitutionally protected conduct, it can be found to be impermissibly void if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner. Kolender v. Lawson, 461 U.S. 352 (1983). A facial challenge in the latter situation is limited. In Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 497 (1982), the Court said:

A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague, in violation of due process. To succeed, however, the complainant must demonstrate that the law is impermissibly vague in all of its applications.

Furthermore, the nature of the law affects the analysis. An enactment imposing criminal sanctions demands more definiteness than one which regulates economic behavior, Hoffman Estates, or as is relevant in our case, one which regulates the conduct of students in the school setting. In Bethel School District No. 403 v. Fraser, 478 U.S. 675, 686 (1986), the Supreme Court said:

Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.

See also Wiemerslage Through Wiemerslage v. Maine Tp. High Sch. Dist. 207, 29 F.3d 1149 (7th Cir. 1994).

Recently, in City of Chicago v. Morales, 527 U.S. 41, 119 S. Ct. 1849 (1999), the Supreme Court considered a facial challenge to a Chicago ordinance. The ordinance prohibited criminal street gang members from loitering with one another or other persons in any public place. Justice Stevens, joined by Justices

Souter and Ginsburg, recognized that the ordinance did not have a sufficiently substantial impact on conduct protected by the First Amendment to subject it to a facial overbreadth challenge. Rather, the ordinance was characterized as a criminal law which contained no mens rea requirement and which infringed on the constitutionally protected right to liberty. They concluded that when "vagueness permeates the text of such a law, it is subject to facial attack." At 1858. Justice Scalia, decrying what he saw as a lowering of the bar for facial challenges, dissented, contending that, at least in contexts other than free speech violations, facial challenges are inherently suspect.

For a number of reasons, we conclude that no facial challenge can be made to rule 10. It is doubtful whether rule 10 proscribes behavior which is protected under any constitutional provision. It is questionable whether it involves free speech rights. In addition, gang membership seems not to implicate the right of association:  in Morales, the Chicago ordinance's "impact on the social contact between gang members and others does not impair the First Amendment 'right of association' that our cases have recognized." 119 S. Ct. at 1857. Not only does rule 10 have very little to do with the Constitution, it also is not a criminal law but merely a school disciplinary rule. In order to prevail, the students here need to show that the rule is unconstitutional in all its applications, which would include its application to them--in other words, that it is unconstitutional as applied. When the rule does not reach a "substantial amount of constitutionally protected conduct," we must uphold a facial challenge "only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates, 455 U.S. at 494-95.

Is the rule unconstitutional as applied to these students? The phrase the students contend is vague is "gang-like activity." The rule goes on to say that "gang-like activity" is conduct engaged in "on behalf of any gang," "to perpetuate the existence of any gang," "to effect the common purpose" of a gang,

or "to represent a gang affiliation, loyalty or membership . . . ." Fighting in support of one's gang falls under more than one of these definitions. Ironically, in Morales the problem with the anti-loitering ordinance was that "loitering" was defined as remaining "in any one place with no apparent purpose." It was the phrase "no apparent purpose" that was found to be overly vague, not the phrase "a criminal street gang member" which was also found in the ordinance. In fact, it may be that the ordinance was not clearly enough limited in its application to gang members. Justice O'Connor, joined by Justice Breyer, said, "If the ordinance applied only to persons reasonably believed to be gang members, this requirement might have cured the ordinance's vagueness because it would have directed the manner in which the order was issued by specifying to whom the order could be issued." 119 S. Ct. at 1864. It is hard to see why police officers might be given discretion to determine who might be a gang member in the context of a criminal law, but school officials cannot determine, in the context of school discipline, what gang-like activity is, especially when what is at issue is a violent fight between rival members of well-known street gangs. The situation is different from that in Rios v. Lane, 812 F.2d 1032 (7th Cir. 1987), in which we found a prison regulation unconstitutional as applied to an inmate who copied information from an authorized prison newspaper and disseminated thecopies. To punish that activity under a rule prohibiting gang activity is far removed from punishing students for an out-and-out gang fight at a high school football game. Notably, also, the prison regulation in Rios was found unconstitutional, not on its face, but only as applied to the inmate.

That any persons charged with keeping the peace--e.g., police officers or school officials--have an obligation to break up a violent fight in the stands at a high school football game cannot be disputed. Then later, when a careful investigation reveals that the fight was between well-known rival street gangs, it is reasonable for school officials to see the fight as "gang-like activity." In fact, the students do not say that the fight was not gang-related. As applied in this case, the school disciplinary rule,

even before it was changed, was sufficiently definite to withstand this constitutional challenge.

The decision of the district court is AFFIRMED.

FOOTNOTES

/1 These gangs are well-known in the Seventh Circuit, as many of our opinions, see United States v. Hoover, 2001 WL 361014 (Apr. 12, 2001) ("The Gangster Disciples, a large and vicious street gang"), and Goka v. Bobbitt, 862 F.2d 646 (7th Cir. 1988) ("The Notorious Vice Lords"), for example, discuss their activities. See also Garner v. Barnett, 199 F.3d 915 (7th Cir. 1999) (en banc), which involved the shooting death of the manager of a high school football team caught between areas "controlled" by the Gangster Disciples and the Vice Lords.

/2 The combination of "and" and "or" in line 4 of the rule is an accurate rendition of the rule. It makes the rule somewhat confusing, but it does not affect our analysis.