THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DEAN E. COCHRAN, Defendant-Appellant.

Second District   No. 2—00—0059

Opinion filed July 18, 2001.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Mark A. Lyon, of Chicago, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Robert E. Davison, of DePaepe & Davison, of Springfield, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Following a bench trial, defendant, Dean E. Cochran, was found guilty of possession with intent to deliver a look-alike substance (720 ILCS 570/404(b) (West 2000)). Because the offense was committed within 1,000 feet of a school, it was elevated from a Class 3 felony to a Class 2 felony (720 ILCS 570/407(b)(3) (West 2000)) and was nonprobationable (730 ILCS 5/5—5—3(c)(2)(D) (West 2000)). Defendant appeals and contends that he is entitled to the reversal of his conviction because (1) the statutes creating and penalizing the offense, as applied to him, violated his right to due process, and (2) the evidence was insufficient to prove him guilty beyond a reasonable doubt. We affirm.

At trial, Douglas Palmer, a Rockford police officer assigned to the tactical unit, testified that on April 23, 1999, at about 10:50 p.m., he was on duty and was engaged in an undercover drug operation in front of 524 Gregory Street in Rockford. Officer Palmer observed defendant whistling and attempting to flag down passing vehicles.

Officer Palmer and two other police officers, who were also in plainclothes, walked toward defendant. According to Officer Palmer, as the officers approached, defendant asked Officer Palmer if he was "straight." Based on his training and his experience in over 100 drug investigations, Officer Palmer understood defendant's question to mean that defendant wanted to sell him drugs. Officer Palmer responded to defendant's question by stating "Sure."

Officer Palmer further testified that defendant then spit a plastic bag out of his mouth onto the street, pointed to the plastic bag with his toe, and asked him to drop some money on the ground. Thereafter, Officer Palmer arrested defendant.

After arresting defendant, Officer Palmer picked up the plastic bag. The plastic bag contained an off-white, chalky, rock-like substance. Officer Palmer concluded that the packaging of the item was very similar to the usual packaging of cocaine for sale on the street and that the substance in the bag was very similar to crack cocaine.

Officer Palmer was aware that he could not establish that the

substance in the bag was cocaine without testing the substance. Officer Palmer recalled that, after defendant's arrest, defendant stated that the substance was "nothing" and was "garbage." Officer Palmer subsequently gave the plastic bag containing the substance to a fellow officer, Officer Shimaitis.

On cross-examination, Officer Palmer acknowledged that he did not observe defendant conduct any transactions other than spitting out the plastic bag; that defendant never asked for a specific amount of money; and that he, Officer Palmer, never gave defendant any money. The only item, other than the plastic bag, that Officer Palmer recovered from defendant after defendant's arrest was a crack pipe.

Brian Shimaitis, a Rockford police officer assigned to the tactical unit, testified that he was on duty on April 23, 1999, at about 11 p.m. and was involved in an undercover drug operation with Officer Palmer. Officer Shimaitis recalled that Officer Palmer gave him a silver metal tube and a plastic bag that contained an off-white substance. Officer Shimaitis later tagged the plastic bag containing the substance into evidence and identified it in court as People's exhibit No. 2. Based on his experience in more than 50 drug investigations, Officer Shimaitis concluded that the substance in the plastic bag had the appearance of crack cocaine and was packaged in the way that crack cocaine was usually packaged for sale on the street.

The State presented evidence showing that the police encounter with defendant occurred within 1,000 feet of the real property of a Rockford public school. Defendant does not dispute this evidence. The State also presented a lab report showing that the substance in the plastic bag that was introduced into evidence as People's exhibit No. 2 was not found to be a controlled substance. Defendant stipulated to the lab report.

Defendant testified that on April 23, 1999, at about 10 p.m., he was trying to purchase crack cocaine to smoke. Defendant had already smoked "quite a bit" of crack cocaine earlier that day. Defendant recalled encountering a man named "E"; giving E some money; getting a bag from E; noticing E drive off; biting the bag at the bottom; and tasting the contents of the bag. Defendant testified that the contents "tasted like—I called it rice, but some kind of grain. I didn't know what it was."

Defendant further testified that after he determined that the bag did not contain crack cocaine he began to chase E and saw E's vehicle make a turn. Defendant then moved to Gregory Street, where he was standing when he saw E drive by. Defendant began hollering and screaming in an effort to get E to stop so that defendant could either get his money back from E or get some real drugs for his money. E did not stop.

Defendant further testified that somebody then walked up to him and asked him if he was "straight." Defendant understood this to mean that the person wanted to either buy or sell drugs. Defendant decided that he "wasn't gonna deal with this guy." According to defendant, when the man walked up to him, he was holding the bag containing the substance that he had purchased from E in his hand. After being asked if he was "straight," defendant threw the bag on the ground. Defendant denied that the bag was in his mouth. Defendant testified that he threw the bag on the ground because it was no use to him and because he had been startled by the person who walked up to him. Defendant testified that he knew that the man was a police officer because he saw the man's badge and side arm.

Defendant further testified that the police officer arrested him after an argument developed. According to defendant, the argument developed because defendant stated that the man was a police officer even though the man denied it, and because defendant had thrown the bag where the police could not see it. Defendant theorized that the police arrested him because he interfered with some operation that they were trying to run.

Following defendant's testimony, the State recalled Officer Palmer as a rebuttal witness. Officer Palmer testified that when he recovered the bag that defendant spit out it was in perfect condition. According to Officer Palmer, there were no holes in the bag until he made a hole to field test the contents of the bag. Officer Palmer also testified that his badge was clipped in his left rear pocket and his side arm was tucked into the small of his back under his belt. Officer Palmer wore a large sweatshirt that covered his badge and gun. Officer Palmer testified that while he was conversing with defendant he never turned his back to defendant.

The State also called as a rebuttal witness Bruce Scott, a Rockford police sergeant who supervised the tactical unit. Sergeant Scott testified that he was one of the three plainclothes police officers who encountered defendant on Gregory Street at about 10:50 p.m. on April 23, 1999. According to Scott, as the three officers approached defendant, none of the officers identified himself as a police officer; defendant asked Officer Palmer if he was "straight"; defendant spit an object that appeared to be narcotics out of his mouth onto the ground; and defendant then pointed to the object with his toe and said, "There it is. There it is. Put some money down."

The trial court found defendant guilty of possession with intent to deliver a look-alike substance within 1,000 feet of a school. The trial court commented that it "[m]ay very well have been that Mr. Cochran received a bad batch from the seller; but then the evidence is clear

that he attempted to sell this, if not to passersby, certainly to Officer Palmer."

After denying defendant's posttrial motion, the trial court sentenced defendant to six years' incarceration plus various fines, fees, and costs. The trial court later denied defendant's motion to reconsider the sentence. Defendant's timely notice of appeal followed.

On appeal, defendant first contends that he is entitled to a reversal of his conviction and sentence because the statute that created the offense of possession with intent to deliver a look-alike substance and the statutes that established the penalties for the offense, as applied to him, violated the due process clause of the Illinois Constitution (Ill. Const 1970, art. I, § 2). The specific statutes that defendant challenges are (1) section 404(b) of the Illinois Controlled Substances Act (Act), which creates the offense of possession with intent to deliver a look-alike substance (720 ILCS 570/404(b) (West 2000)); (2) section 407(b)(3) of the Act, which elevates the offense of possession with intent to deliver a look-alike substance from a Class 3 felony to a Class 2 felony when, *inter alia*, the offense is committed within 1,000 feet of a school (720 ILCS 570/407(b)(3) (West 2000)); and section 5—5—3(c)(2)(D) of the Unified Code of Corrections (Code), which makes the offense of possession with intent to deliver a look-alike substance within 1,000 feet of a school a nonprobationable offense (730 ILCS 5/5—5—3(c)(2)(D) (West 2000)).

●1 We first address defendant's challenges to section 404(b) of the Act (720 ILCS 570/404(b) (West 2000)). Defendant correctly asserts that section 404(b) allows a more severe punishment for the offense of possession with intent to deliver a look-alike substance than for the offense of possession with intent to deliver the controlled substance that the look-alike substance resembles (the actual controlled substance). The punishment may be more severe for the look-alike offense because the maximum possible fine for the look-alike offense is greater than the maximum possible fine for the actual-controlled-substance offense. Compare 720 ILCS 570/404(b) (West 2000) (maximum fine $150,000) with 720 ILCS 570/401(f), (g), (h) (West 2000) (respective maximum fines $125,000, $100,000, and $75,000).

Defendant next correctly notes that in *People v. Wagner*, 89 Ill. 2d 308 (1982), our supreme court held that a precursor of section 404(b) was unconstitutional because it allowed a more severe punishment, in the form of a greater potential fine, for the delivery of a look-alike substance than for the delivery of the actual controlled substance. The *Wagner* court held that the statute violated due process because it was not reasonably designed to remedy the lesser evil of delivery of a look-alike substance. *Wagner*, 89 Ill. 2d at 313.

Defendant also recognizes that the legislature reacted to the *Wagner* decision by reenacting section 404(b) and including a preamble to section 404 of the Act that specified several rationales for penalizing the delivery of a look-alike substance more severely than for delivery of the actual controlled substance. See Pub. Act 82—968, eff. September 7, 1982. Defendant further recognizes that in *People v. Upton*, 114 Ill. 2d 362 (1986), our supreme court reviewed the history of section 404 and the effect of the preamble on the constitutionality of section 404(b). In *Upton*, the court determined that two of the rationales in the preamble showed that section 404(b) was reasonably designed to achieve the goal of preventing drug traffic and abuse. *Upton*, 114 Ill. 2d at 374.

In reference to the two rationales, the court stated:

"It is not inconceivable that look-alike drugs may cause overdoses, either because they contain impurities, or because they mislead users as to the potency and dosages of actual controlled substances. It is also plausible that dealers in look-alike drugs are able to reap greater profits from their sale, and therefore will only be deterred by fines set higher than those levied upon dealers in Schedule III, IV and V controlled substances. Since these asserted, and plausible, hypotheses support a substantial relationship between harsher penalties for sale of look-alike drugs and the greater goal of reducing actual drug abuse, section 404, as amended, does not violate due process." *Upton*, 114 Ill. 2d at 375.

We will refer to the two rationales that the *Upton* court determined were sufficient to allow the legislature to impose greater penalties for look-alike offenses than for actual-controlled-substance offenses as the "overdose rationale" and the "profit rationale."

In this case, defendant does not contend that the *Upton* court erred when it determined that the overdose and profit rationales justified greater penalties for look-alike offenses. Rather, defendant contends that, because the version of section 404(b) that was in force at the time he allegedly committed the offense of possession with intent to deliver a look-alike substance did not include the preamble, we should apply the analysis used in *Wagner* rather than the analysis used in *Upton* and determine that the statute violates due process.

●2 The principles guiding us in reviewing defendant's due process challenges are well settled. All statues are presumed to be constitutional. *People v. Izzo*, 195 Ill. 2d 109, 112 (2001). A party challenging the constitutionality of a statute has the burden of establishing its invalidity. *People v. Wright*, 194 Ill. 2d 1, 24 (2000). Any doubts must be resolved in favor of upholding the statute. *People v. Jones*, 299 Ill. App. 3d 739, 742 (1998).

•3 Under the State's police power, the legislature has wide discretion to prescribe penalties for defined offenses. *People v. Morris*, 136 Ill. 2d 157, 161 (1990). To be a valid exercise of police power, the legislation must bear a reasonable relationship to the interest that is sought to be protected, and the means adopted must constitute a reasonable method of accomplishing the objective. *Morris*, 136 Ill. 2d at 161.

•4 Here, defendant is correct that the legislature enacted the version of section 404 of the Act that was in effect at the time of his arrest without the preamble that was reviewed in *Upton*. See 720 ILCS 570/404 (West 1998). However, we are not persuaded that the legislature's failure to reenact the preamble means that it intended to withdraw the rationales endorsed by *Upton*. Rather, in view of the history of section 404, particularly the legislature's reaction to the *Wagner* decision, we believe that the legislature's reenactment of section 404 after *Upton* should be presumed to be an adoption of the *Upton* rationales. See *People v. Palmer*, 104 Ill. 2d 340, 349 (1984) (legislature presumed to know construction given statute by court). Therefore, we conclude that the rationales endorsed by *Upton* that allowed greater penalties for look-alike offenses than for actual-controlled-substance offenses remain viable even though the legislature did not reenact the preamble when it amended section 404(b). Accordingly, we will apply the *Upton* analysis to defendant's case.

Defendant next contends that even if the *Upton* analysis is applied to his case he is nonetheless entitled to the reversal of his conviction on due process grounds because neither of the *Upton* rationales applies to his case. Defendant argues that subjecting him to the possibility of a greater penalty for a look-alike offense than for an actual-controlled-substance offense when neither of the *Upton* rationales applies to his case would violate his rights to due process.

The State initially responds that the issue of whether either of the *Upton* rationales applies to defendant's case should be deemed waived because the issue is based on factual determinations that defendant failed to raise in the trial court. However, in view of the underlying due process challenge we will overlook any waiver of the issue by defendant. See *Wagner*, 89 Ill. 2d at 311-12.

•5 With respect to the overdose rationale, defendant asserts that the only evidence presented regarding the actual makeup of the look-alike substance was his testimony that the substance was rice or some kind of grain. Based on that assertion, defendant argues that the overdose rationale does not apply in his case because there was no evidence suggesting that the ingestion of rice or grain would be harmful.

The State responds that we should reject defendant's argument

because it is speculative. We agree. Defendant's testimony did not establish what the look-alike substance actually was. Rather, defendant testified that the substance was like rice or a grain but that he did not know what it was. The lab report also did not establish what the substance was. It merely showed that the substance was not a controlled substance. We therefore conclude that defendant's argument is based on nothing more than speculation. In the absence of a sufficient factual basis to support it, we reject defendant's argument that the overdose rationale did not apply in his case.

With respect to the profit rationale, defendant points to the trial court's comment that defendant may have been attempting to sell Officer Palmer a bad batch of drugs that defendant received from someone else. Defendant asserts that the trial court's comment implies that defendant paid the retail price for the substance and then merely attempted to recoup his losses by reselling the substance. Based on this assertion, defendant argues that the profit rationale is not applicable in his case because there was no opportunity for him to realize inflated profits.

As with defendant's challenge to the overdose rational, we conclude that the factual record simply is not sufficient to support defendant's claim. In the first place, defendant suggests that the trial court made a material conclusion regarding his purchase of a bad batch of drugs and his attempt to resell whatever he purchased. However, the trial court's statement was merely a comment and cannot be properly characterized as a material conclusion. Furthermore, even if the trial court's comment is viewed as tantamount to a material conclusion, defendant fails to point to any evidence regarding the price that he paid for the substance or any evidence as to how much he might have received upon reselling the substance. Based on this record, defendant can do no more than speculate as to whether the profit rationale was applicable in his case. We therefore reject defendant's argument that the profit rationale did not apply in his case.

Defendant next challenges the two statutes that enhanced the penalties that he was subjected to. One of these statutes, section 407(b)(3) of the Act (720 ILCS 570/407(b)(3) (West 2000)), elevates the offense of possession with intent to deliver a look-alike substance from a Class 3 felony to a Class 2 felony and raises the maximum possible fine for the offense from $150,000 to $200,000 when, *inter alia*, the offense is committed within 1,000 feet of the real property comprising any school. 720 ILCS 570/407(b)(3) (West 2000). The other statute, section 5—5—3(c)(2)(D) of the Code, makes the offense of possession with intent to deliver a look-alike substance within 1,000 feet of the

real property of a school nonprobationable. 730 ILCS 5/5—5—3(c)(2)(D) (West 2000).

Defendant contends that section 407(b)(3) violates his constitutional right to due process because in elevating the felony category for a defendant charged with a look-alike offense the statute places such a defendant in the same position as a defendant charged with a similar offense involving an actual controlled substance and because the statute provides for a higher maximum fine for the look-alike offense. Defendant contends that section 5—5—3(c)(2)(D) violates his right to due process because it makes a look-alike offense nonprobationable to the same extent that it makes a similar offense involving actual controlled substances nonprobationable. Defendant argues that, in the absence of a declared legislative basis for imposing the same or greater penalties on a look-alike offender as on an actual-controlled-substance offender, we should apply the *Wagner* analysis, determine that the statutes violate his due process rights, and reverse his conviction.

Defendant's argument is a restatement, in a new context, of the argument that he made regarding section 404(b) of the Act. The gist of the argument is the same, *i.e.*, without a specific legislative statement of the rationale for imposing more severe penalties for a look-alike offense than for an actual-controlled-substance offense, a statute that imposes such penalties violates constitutional guarantees of due process.

●6 We reject the argument in this context for reasons similar to our rejection of the argument with respect to section 404(b). Defendant has failed to persuade us that, in the absence of explicit rationales for imposing more severe penalties for look-alike offenses in the statutes in question, the *Upton* rationales are not viable and applicable to these statutes. Accordingly, we conclude that the *Upton* rationales are applicable to section 407(b)(3) of the Act and to section 5—5—3(c)(2)(D) of the Code. Because the *Upton* rationales are applicable to these statutes, the penalties they impose for a look-alike offense do not violate defendant's right to due process.

Defendant next contends that his conviction should be reversed because the State failed to present sufficient evidence to prove his guilt beyond a reasonable doubt. Defendant argues that the evidence was insufficient in that it failed to show (1) that a reasonable person would have been led to believe that the substance in question was a look-alike substance and (2) that he intended to deliver the look-alike substance.

●7 When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). Rather, the relevant

question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Collins*, 106 Ill. 2d at 261. It is the responsibility of the trier of fact to determine the credibility of the witnesses, to resolve conflicts or inconsistencies in their testimony, to assess the weight to be given to their testimony, and to draw reasonable inferences from all the evidence. See *People v. Heard*, 187 Ill. 2d 36, 84 (1999); *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992). A reviewing court should not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. McDonald*, 168 Ill. 2d 420, 444 (1995).

●8 In this case, defendant was convicted of knowingly possessing with intent to deliver a look-alike substance within 1,000 feet of a school. Defendant first challenges the sufficiency of the evidence with respect to whether a reasonable person would have been led to believe that the substance in the bag recovered by Officer Palmer was a look-alike substance. See 720 ILCS 570/102(y) (West 2000) (defining "look-alike substance" as one with characteristics that "would lead a reasonable person to believe that the substance is a controlled substance"). Defendant asserts that the evidence was insufficient because the only evidence that the State presented regarding the characteristics of the substance was based on the specialized experience of Officers Palmer and Shimaitis. Defendant argues that such specialized experience was not sufficient evidence to establish what a reasonable person might have been led to believe about the substance.

Defendant's argument is unpersuasive. The testimony of Officers Palmer and Shimaitis regarding the characteristics of the substance was based on their experience in a number of drug investigations. Defendant maintains that this experience was some kind of "specialized experience" that was not relevant to what a reasonable person might be led to believe with respect to the substance. However, defendant's position ignores the context in which the reasonable person in question would draw his conclusions. The context is that of a drug transaction. Therefore, the officers' involvement in prior drug transactions was exactly the kind of experience called for to determine what a reasonable person in the context of a drug transaction would be led to believe regarding the substance. Accordingly, defendant is not entitled to the reversal of his conviction on this ground.

Defendant next asserts that the evidence was insufficient to show that he intended to deliver the substance. The evidence included the testimony of Officer Palmer that defendant asked Palmer if he was "straight"; that Palmer understood this to mean that defendant

wanted to sell him drugs and responded "Sure"; that defendant then spit a plastic bag out of his mouth onto the ground; that the bag contained a substance that looked like crack cocaine; and that defendant then pointed at the bag with his toe and told Officer Palmer to drop some money on the ground. The evidence also included the testimony of Sergeant Scott that generally corroborated Palmer's testimony. In addition, Scott testified that when defendant pointed at the bag with his toe he stated, "There it is. There it is. Put some money down." The evidence also included defendant's testimony that he understood the term "straight" to mean that a person wanted to buy or sell drugs.

Based on this evidence, a rational trier of fact could have inferred that defendant intended to deliver the substance in the bag, a look-alike substance, to Officer Palmer. Therefore, defendant is not entitled to the reversal of his conviction on the ground that the evidence was insufficient to prove beyond a reasonable doubt that he intended to deliver the look-alike substance to Officer Palmer.

Based on the foregoing, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

HUTCHINSON, P.J., and RAPP, J., concur.