No. 2--00--0480

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT 

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit

OF ILLINOIS, ) Court of Du Page County.

) 

Plaintiff-Appellee, )

)

v. ) No. 99--CM--5198

)

BRYCE JAMESSON, ) Honorable

) Mark W. Dwyer,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

In September 1999 defendant, Bryce Jamesson, was charged by complaint with the offenses of unlawful contact with a street gang member (720 ILCS 5/25--1.1 (West 1998)) and unlawful consumption of alcohol by a minor (235 ILCS 5/6--20 (West 1998)).  At a bench trial, defendant was convicted of the unlawful contact offense and acquitted of the alcohol offense.  The trial court sentenced defendant to a term of two years' probation.  Defendant appeals, challenging the sufficiency of the evidence and the constitutionality of the statute under which he was charged and convicted.  We find the statute constitutional and affirm the trial court's judgment.

The record reflects that on September 22, 1999, defendant pleaded guilty to the offense of possession of cannabis (720 ILCS 550/4(a) (West 1998)).  On the same date, the trial court sentenced defendant to a term of six months' court supervision and imposed an express condition of supervision that, during the term of supervision, "[d]efendant must have no contact with Samuel Banuelos," three other named individuals, "or any other known gang members."

On September 25, 1999, defendant was charged with the offenses in the present case.  On February 8, 2000, defendant filed a motion to dismiss the complaint.  Defendant argued that the statute creating the offense of unlawful contact with street gang members (720 ILCS 5/25--1.1 (West 1998)) was unconstitutional.  The State filed its response to defendant's motion, and the trial court denied defendant's motion.  The cause proceeded to a bench trial.

The State's witness was Russell Schecht, a patrolman with the Addison police department assigned to the gang tactical unit.  Schecht testified that his duties as a tactical officer with gang units include collecting intelligence, training, teaching, and educating other police and nonpolice personnel regarding gangs.  He teaches classes on a regular basis and trades information on gangs with other police departments twice weekly.  Schecht also participates in continuing education about gangs, attends gang intelligence meetings, and has attended seminars of the Midwest Gang Investigators for approximately 10 years.  Schecht added that he had been qualified to testify in court as a gang expert on 15 to 20 prior occasions.

Schecht further testified regarding his familiarity with the structured gangs in Addison, which include the Latin Counts, Latin Kings, Vice Lords, and Insane Deuces.  With respect to the Latin Counts, Schecht testified that they are a "People" gang under the "People" nation, and his department began to have contact with them a couple of years ago.  He explained that gang members from the Cicero area came to Addison and began heavily recruiting members several years ago.  Schecht described the Latin Counts as a violent street gang in Cicero and, in Addison, they have been in numerous violent incidents involving narcotics, batteries, aggravated batteries, assaults, and numerous other criminal activities.

Schecht testified that the Latin Counts are identified by the colors red and black.  He described the many different ways they display their colors and "represent" to the left side of the body.  For example, they may wear their hats tilted to the left side or wear bandannas on their heads with the knot turned to the left.  Schecht also testified regarding his knowledge of the hierarchy and structure of the Latin Counts.  The State tendered Schecht as an expert, and the trial court accepted the tender.

The State continued with its examination of Schecht.  Schecht testified that he was familiar with defendant and had numerous contacts with him.  Schecht described an area called Michael Lane, where there had been a recent concentration of Latin Counts gang members who maintained a presence in that neighborhood.  Schecht testified that defendant admitted to him and other officers on a number of occasions that he is a Latin Counts gang member.

Schecht testified that on September 24, 1999, at approximately 11 p.m., he was on routine patrol with another officer in the Michael Lane neighborhood driving through an alley when he saw two known gang members, George Soria and Sam Banuelos, standing between two apartment buildings.  He observed Soria attired in a black and red sweatshirt and noted they were in an area where they have had "literally" hundreds of gang contacts at the apartment building in numerous incidents, so Schecht and the other officer stopped to make contact with them.  Initially, Schecht thought Soria and Banuelos were the only two individuals outside, but then he realized someone was standing behind Soria.  Schecht observed the third individual walk behind Soria, then turn around and walk away.  Schecht called to the third individual and, when he turned around, Schecht recognized him as defendant.  Schecht testified that defendant was wearing a red jacket, a red Cincinnati Reds hat tilted to the left, and a red bandanna on the left side of his pants or belt loop.  Schecht knew that, by court order, defendant was not allowed to have contact with any other gang members, specifically Banuelos.  Banuelos had admitted to Schecht that he was a gang member; additionally, Schecht has had numerous contacts with Banuelos.  He also noted that Banuelos wears gang colors and is usually with or associated with other gang members.

Schecht next testified regarding gang contact cards, which are used to keep a record of contacts between officers and gang members.  One card reflected that on August 27, 1999, an officer had a contact with Banuelos, defendant, and another gang member.  That contact resulted in both Banuelos and defendant being charged with unlawful possession of cannabis and the other gang member being served with a failure-to-appear warrant.  Another card reflected that on September 24, 1999, Schecht and his partner had a contact with Soria at approximately 11 p.m.  Also noted on the card was that Soria was with defendant, who had a court order for no gang contact.  Soria admitted being a Latin Counts gang member to Schecht, and defendant was arrested.  A third card reflected that on June 4, 1999, three other officers had a contact with Soria, who was with defendant and another individual, and the officers issued loitering tickets.  A fourth contact card reflected that on September 3, 1999, Banuelos, who was with defendant and another individual, was wearing gang colors and loitering.  Banuelos was issued a ticket for loitering.

Schecht opined that, based on previous contacts with Banuelos and his associates, previous records, and the area where Banuelos was observed, Banuelos was a Latin Counts gang member on September 24, 1999.  Schecht also opined that Soria was a Latin Counts gang member on September 24, 1999.  He based his opinion on Soria's style of dress, location, and contacts prior to and since September 24.

Schecht also testified regarding his conversation with defendant on September 24, 1999.  Defendant admitted to Schecht that he knew he had a no-gang-contact order and was not supposed to be with Soria or Banuelos but explained to Schecht that he was waiting for a ride from someone named Robert.  Schecht noticed defendant's breath emitted an odor of alcohol.  Schecht knew that defendant was under the age of 21 and knew defendant had a no-gang-contact order, so he placed defendant under arrest.

The parties rested, and the trial court granted defendant's motion for a directed finding as to the alcohol offense but denied the motion as to the unlawful-contact offense.  On March 28, 2000, the trial court found defendant guilty of committing the offense of unlawful contact with a street gang member.  Following the denial of his posttrial motion, defendant timely appeals.

We will first address the constitutionality of the statute under which defendant was charged and convicted because, in the event that the statute at issue is declared unconstitutional on its face, the ultimate outcome would be to vacate defendant's conviction based upon that statute.  See 
People v. Zeisler
, 125 Ill. 2d 42, 48 (1988) (noting that the doctrine of void 
ab initio
 declares an unconstitutional statute null and void as of the date of its enactment, "which results in the court's vacating a conviction based upon such statute"); see also 
People v. Wright
, 194 Ill. 2d 1, 24 (2000).

The statute, section 25--1.1 of the Criminal Code of 1961 (the Criminal Code) reads, in relevant part:

"(a) A person commits the offense of unlawful contact with streetgang members when:

(1) He or she knowingly has direct or indirect contact with a streetgang member as defined in Section 10 of the Illinois Streetgang Terrorism Omnibus Prevention Act after having been sentenced to *** supervision for a criminal offense with a condition of such sentence being to refrain from direct or indirect contact with a streetgang member or members[.]"  720 ILCS 5/25--1.1 (West 1998).

Our review of the merits of defendant's constitutional challenge is guided by the following principles.  A statute is presumed to be constitutional, and the party challenging it bears the burden of establishing its unconstitutionality.  
Wright
, 194 Ill. 2d at 24; 
People v. Jung
, 192 Ill. 2d 1, 4 (2000).  A reviewing court has a duty to construe a statute in a manner that upholds its constitutionality, if that can be reasonably done.  
People v. Fisher
, 184 Ill. 2d 441, 448 (1998).  The objective of statutory construction is to give effect to the legislature's intent, and, when presented with conflicting interpretations, courts will avoid a construction that creates constitutional difficulties, absurdity, inconvenience, or injustice.  
People v. Berg
, 277 Ill. App. 3d 549, 552 (1996).  Any doubts must be resolved in favor of upholding the statute.  
People v. Cochran
, 323 Ill. App. 3d 669, 675 (2001).  Our standard of review is 
de novo
.  
People v. Maness
, 191 Ill. 2d 478, 483 (2000).

A law can be facially unconstitutional under two different theories.  First, laws that inhibit the exercise of first amendment rights can be invalidated under the overbreadth doctrine.  
Fuller v. Decatur Public School Board of Education School District 61
, 251 F.3d 662, 666 (7th Cir. 2001), citing 
Broadrick v. Oklahoma
, 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).  Second, a law can be found to be impermissibly vague, even if it does not reach a substantial amount of constitutionally protected conduct, if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner.  
Fuller
, 251 F.3d at 666, citing 
Kolender v. Lawson
, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983).

We will first address defendant's contention that the unlawful-contact statute is facially overbroad and, therefore, unconstitutional because it fails to contain a mental state element beyond passive contact with another citizen.  Because the statute exposes an accused to punishment for innocent contact with others, defendant concludes that the statute violates a citizen's right to free assembly.

The doctrine of overbreadth was designed to protect first amendment freedom of expression from laws written so broadly the fear of punishment might discourage taking advantage of that freedom.  
People v. Bailey
, 167 Ill. 2d 210, 226 (1995); 
People v. Rokicki
, 307 Ill. App. 3d 645, 652 (1999).  A statute regulating conduct is overly broad if it (1) criminalizes a substantial amount of protected behavior, relative to the law's plainly legitimate sweep, and (2) is not susceptible to a limiting construction that avoids constitutional problems.  
Rokicki
, 307 Ill. App. 3d at 652.  The overbreadth doctrine should be employed sparingly and only when a challenger can prove that a statute's overbreadth is real and substantial.  
People v. Anderson
, 148 Ill. 2d 15, 26 (1992).

In the present case, we reject defendant's argument that the statute can be applied to innocent or constitutionally protected conduct.  While the offense of unlawful contact with street gang members does contain an element of association, this type of association does not fall within the ambit of the first amendment.  Where the association is an integral part of the unlawful conduct, it has no constitutional protection.  See, 
e.g.
, 
Bailey
, 167 Ill. 2d 210 (1995) (addressing a constitutional challenge to a stalking statute).  Here, the trial court imposed a limitation on defendant's association with others as a part of a valid criminal sentence.  See 
People v. Laughlin
, 293 Ill. App. 3d 194, 198 (1997) (recognizing the State's power to restrict an individual's right to travel when the restriction is rationally related to the imposition of a proper punishment or remedy).  The element of association in the unlawful contact statute is an integral part of the offense.  The offense cannot be committed without the prior condition of supervision, a gathering of street gang members, and defendant's knowing decision to place himself within the assemblage of those street gang members.  Therefore, the element of association in the unlawful contact with street gang members is not constitutionally protected.

Moreover, the unlawful-contact statute is directed only at that type of knowing contact that is unlawful.  Defendant was not issued a complaint because he happened to be in close proximity to two other Latin Count gang members while waiting for a ride from someone named Robert.  Rather, defendant was issued a complaint because Officer Schecht recognized defendant in the company of two known gang members; Schecht knew defendant had just been sentenced to a term of supervision based upon a criminal offense; Schecht knew that the trial court had ordered defendant to have no contact with street gang members, specifically Banuelos; and defendant admitted that he knew he was not supposed to be with Banuelos.

Contrary to defendant's assertion, section 25--1.1 does not lack a mental state element.  Section 25--1.1 expressly provides that the mental state for the offense of unlawful contact with street gang members is knowledge.  A person may be convicted under this statute only if that person knowingly and unlawfully violates a specific court sentencing order.  Any other individual who has not been the subject of a criminal prosecution and who has not been specifically ordered in a sentencing decree to avoid knowing contact with street gang members is clearly not subject to punishment under this statute.  See 
Anderson
, 148 Ill. 2d at 26.  Therefore, no person could reasonably believe that punishment would be real and substantial for any conduct not in violation of a specific court order.  We conclude that the Illinois criminal offense of unlawful contact with street gang members is not unconstitutionally overbroad.

We next address defendant's contention that the unlawful-contact statute is unconstitutionally vague because the term "contact" is a concept about which reasonable people will have to speculate to give meaning.  A facial challenge to determine whether a statute is impermissibly vague is limited.  
Fuller
, 251 F.3d at 666.  To prevail on a vagueness challenge to a statute that does not implicate first amendment concerns, as is the case here, a party must demonstrate that the statute was vague as applied to the conduct for which the party is being prosecuted.  
Bailey
, 167 Ill. 2d at 228.  Due process requires that a statute not be so vague that persons of common intelligence must necessarily guess at its meaning or application.  
People v. Ramos
, 316 Ill. App. 3d 18, 26 (2000).  The determination of whether a statute is void for vagueness must be made in the factual context of each case.  
People v. Falbe
, 189 Ill. 2d 635, 639 (2000); 
People v. Kershner
, 291 Ill. App. 3d 1024, 1027 (1997), citing 
People v. Bales
, 108 Ill. 2d 182, 189 (1985).

The unlawful-contact-with-street-gang-members statute must satisfy two requirements to comport with the standards of due process.  First, the statute's prohibitions must be sufficiently definite, when measured by common understanding and practices, to inform a person of ordinary intelligence what conduct is lawful and what conduct is unlawful.  
People v. Izzo
, 195 Ill. 2d 109, 113 (2001).  Second, the statute must provide sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions.  
Izzo
, 195 Ill. 2d at 113.  So long as a defendant's conduct clearly falls within the statutory proscription, a defendant may be prosecuted under the statute in harmony with due process, even though the statute may be vague as to other conduct.  
Izzo
, 195 Ill. 2d at 113, citing 
Anderson
, 148 Ill. 2d at 28.

In the present case, we determine that the unlawful-contact statute is not vague.  We recognize that criminal acts cannot always be defined with absolute precision.  
City of Chicago v. Powell
, 315 Ill. App. 3d 1136, 1147 (2000), citing 
People v. Burpo
, 164 Ill. 2d 261 (1995).  The word "contact" bears definitions of "association, relationship," "connection, communication," and "to get in communication with."  See Webster's Ninth New Collegiate Dictionary 282 (1990).  Section 25--1.1 of the Criminal Code requires a defendant to knowingly have contact with a gang member, despite an explicit prohibition in a trial court's sentencing order, for a violation to occur.  720 ILCS 5/25--1.1 (West 1998).  We believe that a person of ordinary intelligence would reasonably know that she or he could not knowingly communicate with, meet with, or associate with those gang members as set out in the sentencing order.  Moreover, trial courts have long used their discretion to impose "no contact" conditions in imposing sentences.  See, 
e.g.
, 
People v. Kimbrell
, 291 Ill. App. 3d 605 (1997); 
People v. Rymut
, 216 Ill. App. 3d 920 (1991).

Defendant relies upon 
City of Chicago v. Morales
, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999), in support of his vagueness argument.  In 
Morales
, the Supreme Court considered a facial challenge to a Chicago ordinance that prohibited criminal street gang members from loitering with one another or with other persons in any public place.  The ordinance required a police officer, upon observing a person the officer reasonably believed to be a criminal street gang member loitering in a public place with one or more persons, to order all of the persons to disperse, and it made the failure to obey the order a violation.  Justice Stevens, joined by Justices Souter and Ginsburg, recognized that the ordinance did not have a sufficiently substantial impact on conduct protected by the first amendment to subject it to a facial overbreadth challenge.  
Morales
, 527 U.S. at 55, 144 L. Ed. 2d at 79, 119 S. Ct. at 1858.  Rather, the ordinance was characterized as a criminal law that contained no 
mens rea
 requirement and that infringed on the constitutionally protected right to liberty.  The Court concluded that, when "vagueness permeates the text of such a law, it is subject to facial attack."  
Morales
, 527 U.S. at 55, 144 L. Ed. 2d at 79, 119 S. Ct. at 1858.

The 
Morales
 Court held that the ordinance was impermissibly vague in part because it failed to establish minimal guidelines for law enforcement.  
Morales
, 527 U.S. at 60-63, 144 L. Ed. 2d at 82-84, 119 S. Ct. at 1861-62.  It noted that the prohibited conduct was loitering, that is, remaining in one place with no apparent purpose, and concluded that the ordinance failed to give an ordinary citizen adequate notice of what conduct was forbidden and what conduct was permitted.  The Court further reflected that, because the ordinance required no harmful purpose, it applied to any individuals who remained in one place with a suspected gang member as long as their purpose was not apparent to an officer.  The Court noted that the ordinance required an officer to order the dispersal of such persons without first inquiring into their possible purposes.  
Morales
, 527 U.S. at 57-63, 144 L. Ed. 2d at 80-84, 119 S. Ct. at 1859-62.  Here, however, the meaning of the term "contact" is not so vague that the ultimate decision as to its meaning is left to the private conceptions of police officers.  Moreover, the unlawful-contact statute requires an unlawful purpose.  
Contra
 
Morales
, 527 U.S. at 60-63, 144 L. Ed. 2d at 82-84, 119 S. Ct. at 1861-62.

Defendant also presents a hypothetical situation in which he argues that, had he been attending school and sitting in a classroom alongside another gang member, he would have been exposed to a conviction of the unlawful-contact offense.  He also asserts that the State's evidence established that defendant was merely standing in a public place in proximity to persons who were members of the Latin Counts gang.  Our supreme court has held, however, that a statute is not unconstitutionally vague merely because one can imagine hypothetical situations in which the meaning of some terms might be called into question.  
Izzo
, 195 Ill. 2d at 113.  Again, the validity of the law must be judged in light of the particular facts of the present case.  The innocent school classroom scenario posited by defendant is not at issue here.  Rather, the events giving rise to defendant's prosecution involve a knowing contact following a trial court's order to refrain from being in contact with certain street gang members.

Defendant was charged with the specific unlawful act of knowingly having contact with a street gang member after having been sentenced to supervision with an explicit condition to refrain from having any contact with Banuelos or other gang members, a violation of our Criminal Code (720 ILCS 5/25--1.1 (West 1998)), and not with any vague conduct.  If defendant was confused as to what the trial court meant by "no contact with Samuel Banuelos *** or any other known gang members," he could have inquired at his sentencing hearing following his guilty plea.  See 
Izzo
, 195 Ill. 2d at 114-15.  The record clearly reflects that no confusion existed on the part of defendant then or on appeal now as to the meaning of the trial court's proscription against contact with Banuelos or other known gang members.

Inasmuch as defendant is the party challenging the constitutionality of a statute, he bears the burden of clearly establishing the constitutional violation.  See 
Wright
, 194 Ill. 2d at 24; 
People v. DePalma
, 256 Ill. App. 3d 206, 210 (1994).  Upon our review of the issues presented, we determine that defendant has failed to satisfy that burden.

Defendant next contends that the Illinois Streetgang Terrorism Omnibus Prevention Act (the Act) (740 ILCS 147/1 
et seq.
 (West 1998)) is unconstitutional because it allows for one of its definitions, "streetgang," to be proved by a preponderance of the evidence in a prosecution for the offense of unlawful contact with a street gang member (720 ILCS 5/25--1.1 (West 1998)).  The State responds that defendant has incorrectly interpreted the statute and, further, nothing in the record supports the inference that the trial court used a standard of proof other than the beyond-a-reasonable-doubt standard.  We agree with the State's position and find that defendant's contention is meritless.

Section 10 of the Act defines "streetgang" as:

"[A]ny combination, confederation, alliance, network, conspiracy, understanding, or other similar conjoining, in law or in fact, of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member engages in a course or pattern of criminal activity."  740 ILCS 147/10 (West 2000).

The paragraph following the definition of "streetgang" reads:

"For purposes of this Act, it shall not be necessary to show that a particular conspiracy, combination, or conjoining of persons possesses, acknowledges, or is known by any common name, insignia, flag, means of recognition, secret signal or code, creed, belief, structure, leadership or command structure, *** when the conspiracy's existence, in law or in fact, can be demonstrated by a preponderance of other competent evidence.  However, any evidence reasonably tending to show or demonstrate, in law or in fact, the existence of or membership in any conspiracy, confederation, or other association described herein, or probative of the existence of our membership in any such association, shall be admissible in any action or proceeding brought under this Act."  740 ILCS 147/10 (West 2000).

The preceding paragraph clearly reflects that it is limited to actions or proceedings brought under the Act, a civil cause of action.  See 740 ILCS 147/15 (West 2000).  Section 5 of the Act sets out the legislative findings, which include the legislative intent to create a civil remedy against street gangs and their members.  740 ILCS 147/5 (West 2000).  Section 20 of the Act sets out the procedures to commence an action under the Act, "as in civil cases" (740 ILCS 147/20 (West 2000)), and the other sections provide for venue, service of process, and relief (740 ILCS 147/25, 30, 35 (West 2000)).  No provision in the Act references a preponderance-of-the-evidence burden of proof to be incorporated into offenses contained in the Criminal Code.

All statutes are presumed to be constitutionally valid.  
People v. Sanders
, 182 Ill. 2d 524, 528 (1998).  We must affirm the enactment's validity and constitutionality if reasonably possible.  
Sanders
, 182 Ill. 2d at 528.  Defendant in the present case bears the burden of clearly establishing its constitutional infirmity. See 
Sanders
, 182 Ill. 2d at 528-29.  Any doubts about the enactment's validity are resolved in favor of the statute.  
People v. Shephard
, 152 Ill. 2d 489, 499 (1992).  We find nothing in the Act to support defendant's contention.

Due process requires that a defendant be proved guilty beyond a reasonable doubt before being punished for a crime.  
People v. Weston
, 271 Ill. App. 3d 604, 615 (1995), citing 
In re Winship
,  397 U.S. 358, 364, 25 L. Ed. 2d 368, 375, 90 S. Ct. 1068, 1072-73 (1970).  Although a trial court is presumed to know the law and apply it properly, when the record affirmatively shows the contrary, that presumption is rebutted.  
Weston
, 271 Ill. App. 3d at 615, citing 
People v. Virella
, 256 Ill. App. 3d 635, 638 (1993).  In the present case, nothing in the record suggests that the trial court used any standard other than the beyond-a-reasonable-doubt standard, and defendant does not claim that it did.  Accordingly, defendant's claim fails.

Last, defendant challenges the sufficiency of the State's evidence presented at trial.  He argues that the State failed to prove him guilty beyond a reasonable doubt.  Specifically, he asserts that the State failed to prove that the Latin Counts were a street gang as defined in the Act (740 ILCS 147/10 (West 1998)). 

The standard for reviewing the sufficiency of the evidence in a bench trial is the same as it is in a jury trial.  
People v. Herring
, 324 Ill. App. 3d 458, 460 (2001), citing 
People v. Howery
, 178 Ill. 2d 1, 38 (1997).  Our role is not to retry the defendant.  
People v. Cochran
, 323 Ill. App. 3d 669, 678 (2001).  
In assessing whether the evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, a reviewing court must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (Emphasis omitted.)  
People v. Thomas
, 178 Ill. 2d 215, 232 (1997), quoting 
 
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).
  The trier of fact bears the responsibility to assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence.  
People v. Williams
, 193 Ill. 2d 306, 338 (2000); 
Cochran
, 323 Ill. App. 3d at 678-79.  We afford the trier of fact great deference.  
People v. DePaolo
, 317 Ill. App. 3d 301, 306 (2000).  We will not reverse a defendant's conviction unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt of the defendant's guilt.  
Williams
, 193 Ill. 2d at 338.

To find defendant guilty of the offense of unlawful contact with street gang members, the State must prove, and the trier of fact must find, that defendant had been previously convicted of a criminal offense; defendant had been sentenced to probation, conditional discharge, or supervision for that criminal offense; as a condition of the sentence, defendant was to refrain from direct or indirect contact with a street gang member or members; and defendant thereafter knowingly had direct or indirect contact with a street gang member.  See 720 ILCS 5/25--1.1 (West 1998).  Defendant in the present case does not dispute his prior conviction, sentence, or condition of the sentence that he have no direct contact with Samuel Banuelos or any other known gang members.  Defendant contends that the State failed to prove beyond a reasonable doubt that the Latin Counts organization was a "streetgang" as defined in the Act.

Section 10 of the Act defines "streetgang" as:

"[A]ny combination, confederation, alliance, network, conspiracy, understanding, or other similar conjoining, in law or in fact, of 3 or more persons with an established hierarchy that, through its membership or through the agency of any member engages in a course or pattern of criminal activity."  740 ILCS 147/10 (West 1998).

"Course or pattern of criminal activity" is defined as: 

"2 or more gang-related criminal offenses committed in whole or in part within this State when:

(1) at least one such offense was committed after the effective date of this Act;

(2) both offenses were committed within 5 years of each other; and

(3) at least one offense involved the solicitation to commit, conspiracy to commit, attempt to commit, or commission of any offense defined as a felony or forcible felony under the Criminal Code of 1961."  740 ILCS 147/10 (West 1998).

At trial, the State presented evidence establishing that on September 24, 1999, two days after the trial court sentenced defendant to supervision with the condition that he have no contact with Banuelos or any other known gang members, Officer Schecht saw defendant in the presence of Banuelos and Soria, another known gang member.  Banuelos and Soria had previously admitted to Schecht that they were Latin Counts gang members.  Defendant purportedly admitted to Schecht his awareness of the no-gang-contact order and his knowledge that he was not supposed to be with Banuelos and Soria.  Schecht testified as an expert witness on gangs and as an occurrence witness.  Schecht described the location of the incident, Michael Lane, as an area where "literally hundreds of gang contacts" occurred.  Schecht described their clothing, the significance of the colors, and the manner in which they were attired.

Schecht further testified regarding his duties, which included collecting and trading information and educating others about gangs.  As an expert witness, Schecht testified regarding his familiarity with the structured street gangs in Addison and, specifically, the Latin Counts.  Schecht testified regarding his knowledge of the hierarchy and structure of the Latin Counts, which include a president and a type of treasurer.  He was aware that ledgers existed and showed whether dues were paid.  He testified that the Latin Counts are a People gang under the People nation and the Addison police department began to have contact with them a couple of years ago.  He explained the recruitment efforts of the Latin Counts.  Schecht described the Latin Counts as a violent street gang in Cicero and, in Addison, they had been involved in numerous violent incidents.  Their involvement includes narcotics, batteries, aggravated batteries, assaults, and numerous other criminal activities.  Schecht opined that the Latin Counts organization was a street gang and that Banuelos and Soria were Latin Counts gang members.

In 
Richardson v. Chapman
, 175 Ill. 2d 98 (1997), our supreme court held that a witness, whether expert or lay, may provide an opinion on an ultimate issue in a case.  
Richardson
, 175 Ill. 2d at 107.  This rule also applies to criminal cases.  See 
People v. Terrell
, 185 Ill. 2d 467, 496-97 (1998).  The 
Terrell
 court reasoned that, because the trier of fact is not required to accept the witness's conclusion, the testimony cannot be said to usurp the province of the trier of fact.  
Terrell
, 185 Ill. 2d at 496-97, citing 
Richardson
, 175 Ill. 2d at 107-08.

In the present case, Schecht's testimony was necessary to establish the essential element that defendant knowingly had contact with a street gang and the Latin Counts were a street gang as defined in the Act.  Although Schecht did not testify as to specific dates or specific incidents, the trial court was free to accept or reject Schecht's opinions that the Latin Counts were a street gang that engaged in a course or pattern of criminal activity.  Schecht described his familiarity with the Latin Counts organization and its members, specifically Banuelos and Soria.  Schecht testified that the police department began to have contact with the Latin Counts "a couple of years ago" and that the Latin Counts have been involved in numerous violent incidents.  The trial court could have properly determined that the criminal activity occurred after the effective date of the Act, January 1, 1993.  Further, because the Latin Counts began their criminal activity in Addison only a couple of years ago, the trial court properly could have found that the offenses occurred within five years of each other.  Schecht's testimony also established that the Latin Counts were involved in, 
inter alia
, aggravated batteries (see, 
e.g.
, 720 ILCS 5/12--4 (West 2000)).  The trial court, thus, properly could have determined that at least one of the criminal offenses Schecht testified to was a felony.  Therefore, based upon Schecht's testimony, the trial court properly could have determined that the State established that the Latin Counts engaged in a course or pattern of criminal activity.  See 740 ILCS 147/10 (West 2000).  At the end of the trial, the trial court concluded that the State had met its burden of proof beyond a reasonable doubt, and it found defendant guilty of the unlawful-contact offense.  Based on Schecht's testimony, his opinions, and the reasonable inferences therefrom, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the Latin Counts organization was a street gang as defined in the Act.

After a review of the record in the light most favorable to the prosecution, we conclude that a rational trier of fact could have determined beyond a reasonable doubt that defendant was guilty of the offense of unlawful contact with street gang members (720 ILCS 5/25--1.1 (West 1998)).  We hold that the evidence supports the trial court's guilty verdict.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.