2020 IL App (1st) 171838-U

No. 1-17-1838

Order filed June 9, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 2613 |
| | ) | |
| DAESHNEA MONTGOMERY, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for unlawful use or possession of a weapon by a felon is affirmed where the trial court did not err in admitting photographs of her tattoos.

¶ 2    Following a jury trial, defendant Daeshnea Montgomery was convicted of unlawful use or possession of a weapon by a felon and sentenced to four years' imprisonment. On appeal, defendant argues the trial court erred in allowing the State to publish photographs depicting her

shoulders and arms, revealing tattoos, because the photographs were irrelevant, and their prejudicial effect outweighed their probative value. We affirm.

¶ 3     Defendant was charged by indictment with one count of unlawful use or possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)), arising from an incident on January 8, 2016.

¶ 4     The State contended in its opening statement that defendant argued with her brother, Anthony Montgomery Jr., then retrieved a firearm that discharged into her own wrist and the stomach of her girlfriend, Shante Williams. Defense counsel argued that defendant's brother attacked her and she was a victim of gun violence "at the hands of a family member." According to defense counsel, evidence would also show that defendant "lied" to police because "she didn't want her brother to get in trouble."

¶ 5     Chicago police sergeant David Rodriguez testified that around 1:50 p.m. on January 8, 2016, he responded to a shooting at a residence on the 4100 block of West Adams Street. When Rodriguez arrived, paramedics were placing Williams on a gurney. The defendant, Anthony Jr., and their father, Anthony Montgomery Sr., were all present when Rodriguez entered the residence.[1] Rodriguez observed a trail of blood through the back porch, kitchen, and a bedroom next to the kitchen, and a shell casing on the bedroom floor.

¶ 6     Defendant initially told Rodriguez there was an altercation in an alley and a firearm discharged, striking Williams in the stomach. Ten minutes into questioning, defendant said she would tell "the truth," removed her bleeding left hand from her jacket, and stated that she had a firearm in the front bedroom closet. Rodriguez called an ambulance for defendant and then went

---

[1] As Anthony Montgomery Jr. and his father Anthony Montgomery Sr. have the same last name as defendant, we will refer to them as Anthony Jr. and Anthony Sr., respectively.

to the front bedroom, which was filthy and contained multiple dogs, and observed a silver firearm on the closet floor.

¶ 7    Ontiveros testified that he and his partner, Officer Michael Cantore, responded to the shooting and followed defendant's ambulance to the hospital. At the hospital, defendant was "upset about the incident" and began "blurting out specifics." Defendant stated she argued about a cell phone with Anthony Jr., with whom she had a "violent relationship." Anthony Jr. got "on top of her" and "struck her a couple times." While on the ground, defendant reached for a firearm that she had hidden in the residence after finding it the day before in an alley. She pointed the firearm at Anthony Jr. and they struggled over it, causing it to discharge and strike defendant's left wrist and Williams's stomach.

¶ 8    Detective Matthew Hazlehurst testified that defendant had already been transported to the hospital when he arrived at the residence. Inside, Hazlehurst observed blood splatters on the living room floor, in the rear bedroom, leading out of the rear bedroom into the kitchen, and out of the rear exit. He also observed a firearm in the front bedroom closet and a spent shell casing in the rear bedroom.

¶ 9    Hazlehurst later interviewed defendant at the police station. Defendant stated she and Anthony Jr. argued about a cell phone in the rear bedroom. Anthony Jr. struck defendant's left shoulder, then got on top of her and attempted to strike her head. Defendant blocked the blows with her forearms. At some point, defendant retrieved a firearm that she had stored under a mattress or carpet pad in order to "scare her brother into stopping the attack." They struggled for the firearm, and defendant and Williams were injured when the firearm discharged. Defendant continued pointing the firearm at Anthony Jr., then dropped it on the mattress. Defendant left the residence but returned shortly thereafter and placed the firearm in the front bedroom closet.

3

¶ 10    Hazlehurst identified People's Exhibits 33 through 38 as photographs of defendant taken on the date of the shooting. Defense counsel objected to the photographs based on "relevance." Hazlehurst testified that during his 16 years as a police officer and detective, he had investigated many domestic battery cases and was familiar with domestic battery victims' injuries. Defense counsel responded that Hazlehurst's testimony was "beyond the kin of a lay witness" and that the tattoos displayed in the photographs "would cause the jurors to look at [defendant] in an unseeming [*sic*] light as people *** associate them with gang membership."

¶ 11    The trial court denied admission of the photos depicting designs and script tattoos across defendant's upper body, lower left arm, and left shoulder area. The court admitted photos of defendant's left shoulder and neck and close-ups of her lower arms, which also showed tattoos depicting cherries, the phrase "music is the sound of life," the numeral 3 in a five-point star, the numeral 26 in a five-point star, and a partial depiction of the phrase "Chi-Town." Hazlehurst testified that the injuries depicted in the photographs were inconsistent with defendant's claim that she had been the victim of domestic violence.

¶ 12    Williams testified that on January 8, 2016, she was in the back bedroom with defendant. At some point, Anthony Jr. entered and argued with defendant about a cell phone. Defendant called Anthony Jr. a thief and he became "outraged," pacing and screaming in the hallway.

¶ 13    Anthony Jr. reentered the bedroom and approached defendant, who was sitting down, and said, "call me a thief one more time, I'm a steal off of you," meaning he was going to punch her in the face. Defendant called him a thief again and Anthony Jr. punched her in the face. Defendant and Anthony Jr. "tussl[ed] back and forth" and ended up on the floor, with Anthony Jr. on top of defendant, "pounding her." Williams could only see "the triangle of [defendant's] elbow and a

partial of her face." While attempting to move Anthony Jr. off defendant, Williams heard a gunshot.

¶ 14    Williams realized she was shot in the stomach and walked out the back door to find someone to call an ambulance. Williams never saw defendant reach for a firearm or in possession of a firearm that day.

¶ 15    The parties stipulated that defendant was "convicted of a qualifying felony offense" for purposes of unlawful use or possession of a weapon by a felon. The defense called Anthony Sr., who testified that he "put [Anthony Jr.] out" the day before because he brought a gun to his house, but was not present when the incident occurred.

¶ 16    The jury found defendant guilty of unlawful use or possession of a weapon by a felon. Defendant's posttrial motion alleged, in relevant part, that the trial court erred in admitting the photographs depicting defendant's tattoos. In denying the motion, the Court reasoned that the State used the photos "to disprove the fact that [defendant] was having an altercation and the photographs helped in that," and that the photographs were "more probative than prejudicial." Ultimately, the defendant was sentenced to a term of four years in the Illinois Department of Corrections.

¶ 17    On appeal, defendant argues the trial court erred in allowing irrelevant and unduly prejudicial photographs to be admitted into evidence and published to the jury. One of the photographs displayed a tattoo of the number 26, which, according to defendant, is associated with the Two-Six street gang. The State asserts that the photographs were admissible to rebut defendant's theory that Anthony Jr. was the aggressor and possessed the firearm. The State also argues that the photos were not unduly prejudicial because defendant's tattoos do not suggest gang affiliation, and no reference to gang affiliation was raised at trial.

5

¶ 18    For evidence to be admissible, it must be relevant. *People v. Decaluwe*, 405 Ill. App. 3d 256, 266-67 (2010). Evidence is relevant where it tends to make a fact important to the determination of a matter more or less probable than it would be without the evidence, and is not "remote, uncertain, or speculative." *Id.* at 268. Relevant evidence, however, may still be inadmissible where its prejudicial effect outweighs its probative value. *Id.* We review the trial court's decision to admit evidence under the abuse of discretion standard, and thus, will not disturb the court's decision absent an abuse of discretion. *Id.* at 266; see also *People v. Rivera*, 2013 IL 112467, ¶ 37 ("An abuse of discretion occurs only where the trial court's decision is arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it."). An evidentiary error may be deemed harmless where there is no probability that the jury would have acquitted the defendant absent the error. *People v. Pelo*, 404 Ill. App. 3d 839, 865 (2010).

¶ 19    Defense counsel asserted in opening and closing statements that Anthony Jr. had the firearm and attacked defendant, who "lied" to police about how the shooting occurred because she did not want Anthony Jr. to "get in trouble" for possessing the weapon. Hazlehurst testified that defendant said Anthony Jr. attacked her and she blocked the blows with her forearms before reaching for a firearm that she had found the previous day and hid nearby. Accordingly, the photos were relevant to show that defendant's injuries were inconsistent with her statements to the police and to rebut her claim that Anthony Jr. was the aggressor who possessed the firearm.

¶ 20    Further, the probative value of the evidence was not outweighed by its potential prejudice. Although the photographs displayed tattoos on defendant's neck, chest, and arms, there was no evidence of gang affiliation introduced by either side at trial. Defendant's reliance on *People v. Lozano*, 2017 IL App (1st) 142723 and *People v. Salas*, 2011 IL App (1st) 091880 in support of the argument that the number 26 on one of her tattoos suggested to the jury that she was a member

of the Two-Six street gang is misplaced. In both of those cases, the State introduced testimony concerning the defendants' gang affiliations. See *Lozano*, 2017 IL App (1st) 142723, ¶¶ 12-13 (officer testified members of the Two-Six gang identify themselves with tattoos of "three dots," which defendant had on his finger); *Salas*, 2011 IL App (1st) 091880, ¶ 22 (officer testified that defendant had three dots tattooed on his finger which indicated membership in a gang). In contrast, no gang affiliation evidence was introduced in this case. Accordingly, the admission of these photographs into evidence did not constitute an abuse of discretion.

¶ 21    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 22    Affirmed.