2021 IL App (1st) 190816-U

No. 1-19-0816

Order filed April 28, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 18479 |
| | ) | |
| PAUL HILL, | ) | Honorable |
| | ) | Michael B. McHale, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse defendant's conviction for possession of a counterfeit credit or debit card, concluding the State's evidence was insufficient to prove the credit or debit cards he possessed were counterfeit as that term is defined by statute. In addition, we vacate defendant's 2008 conviction for aggravated unlawful use of weapon as it was based on an unconstitutional statute.

¶ 2    Following a jury trial, defendant Paul Hill was found guilty of five counts of possession of a counterfeit credit or debit card in violation of section 17-41(a)(ii) of the Criminal Code of 2012 (Code) (720 ILCS 5/17-41(a)(ii) (West 2014)). The trial court merged the counts and sentenced

him to five years' imprisonment. He appeals, arguing the State's evidence was insufficient to sustain his conviction where it failed to prove the cards which he was charged with possessing were "counterfeit" as that term is defined by statute. He also argues, and the State concedes, his 2008 conviction for aggravated unlawful use of weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) in Cook County case No. 08 CR 15057 must be vacated because our supreme court has found the statute under which he was convicted unconstitutional. For the following reasons, we reverse his conviction for possession of a counterfeit credit or debit card and vacate his 2008 AUUW conviction.

¶ 3        After an October 23, 2015 traffic stop, the State charged defendant by indictment with multiple counts of identity theft, possession of altered or counterfeited credit or debit card, and possession of incomplete card. The State proceeded to trial on five counts of possession of altered or counterfeited credit or debit card (counts XI-XV). Each count alleged that, on October 23, 2015, defendant possessed a purported credit or debit card with knowledge the card had been counterfeited in violation of section 17-41(a)(ii) of the Code.[1] The matter proceeded to a jury trial, and the evidence showed, in relevant part, as follows.

¶ 4        Officer Sergio Herrera testified that, on October 23, 2015, he and his partner, Officer Salvador Lara, were on patrol when they observed a van driving with one of its headlights missing. As the van passed them, Herrera saw a woman in the passenger seat. The officers activated their vehicle's emergency lights, and the van ultimately stopped at a gas station. The officers exited their squad car, and Herrera observed the van shaking, so he rushed to the passenger side. At the

_____

[1] The State dismissed the remaining charges of the indictment. (R. 356).

passenger door, he observed defendant readjusting himself in the passenger seat, and the woman he had seen as the van passed them was sitting in the driver's seat.

¶ 5    Herrera asked defendant to produce a driver's license and proof of insurance and, when defendant was unable to do so, placed him in custody. Herrera performed a custodial search and discovered a large amount of United States currency from defendant's right-front pocket and multiple credit cards in his left-back pocket. After determining defendant's driving privileges had been revoked, Herrera transported him to the police station for further processing, and the van was impounded.

¶ 6    At the station, Herrera and Lara performed a more intensive search of defendant, and Lara recovered from defendant's pocket the 10 credit cards Herrera had observed on scene. Six of the cards bore the name "Jasmine Williams," three had no name or numbers, and one had only numbers. The officers also performed an inventory search of the van, during which they recovered a printer and a black bag containing equipment the officers believed was used to create credit cards. The officers also recovered 29 credit cards, many of which were blank. The officers inventoried the items recovered and contacted the financial crimes division.

¶ 7    Financial crimes detective Christine Purtell testified she was assigned to investigate this case and reviewed the evidence recovered by Herrera and Lara. She took the 10 cards which were recovered from defendant's pocket and used a reader and computer to determine what was encoded into the magnetic strips on the backs of the cards and whether the cards were valid. On the five cards defendant was charged with possessing, each of which bore the name "Jasmine Williams," Purtell determined the account numbers encoded in the magnetic strips on each of the cards matched the account numbers imprinted on the front of the cards, and the account numbers on each

card were different from one another. Three cards appeared to be Go Bank Mastercards and two appeared to be Walmart cards, but the account numbers on those cards were issued by Fifth Third Bank. Each of the cards appeared to be gift cards, which Purtell explained work like debit cards and typically have their numbers printed, rather than embossed, on them. Purtell explained that printed account numbers can be removed with alcohol and steel wool, which would permit new account numbers to be embossed on the cards.

¶ 8     Purtell contacted an investigator at Fifth Third Bank and provided him with the account numbers which were embedded into the cards. The investigator e-mailed her the account information for each of the account numbers, which showed the five account numbers were associated with five separate individuals, none of whom were defendant or Jasmine Williams. When asked whether she had determined "the status *** of these cards," Purtell responded, "[t]hey are counterfeit."

¶ 9     Purtell also identified and described the equipment that was found in the black bag in the van, which included a label maker, an embosser, an encoder, and a laser printer. According to Purtell, the label maker had no particular use in making fraudulent credit cards. The embosser could be used to imprint names and numbers on the front of a credit card. The encoder could be used to write information into the magnetic strip on the back of a card. The laser printer could be used to print a company logo or other information onto cardstock or sticker paper that is then placed on the front of a blank card. However, the cards recovered from defendant did not have sticker paper on them and did not appear to be printed by the laser printer.

¶ 10    The jury found defendant guilty of all five counts of possession of a counterfeit credit or debit card. Defendant filed a motion for new trial, which the trial court denied. The court merged

the counts and sentenced defendant to an extended term of six years' imprisonment. Defendant orally moved to reconsider sentence, which the court denied.

¶ 11 After defendant filed his notice of appeal, he supplemented the record with a copy of the charging instrument and written sentencing order in Cook County case No. 08 CR 15057. Those documents show that, in 2008, he was convicted of AUUW under section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1963 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) and sentenced to three years' imprisonment.

¶ 12 Defendant first contends the State's evidence was insufficient to sustain his conviction. Specifically, he argues the State failed to present evidence that he possessed counterfeit credit cards as defined by statute and, at best, the evidence established he possessed altered credit cards, which is a different offense with which the State did not charge him. Therefore, he argues, we must reverse his convictions. For the following reasons, we agree.

¶ 13 When a defendant presents a challenge to the sufficiency of the State's evidence, "a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted; emphasis in original.) *People v. Ross*, 229 Ill. 2d 255, 272 (2008). The reviewing court does not retry the defendant, and "the trier of fact remains responsible for making determinations regarding the credibility of the witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* The mere fact the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee reasonableness of the decision. *Id.* A criminal conviction

will be set aside where the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 14     Section 17-41 of the Code criminalizes the possession of altered and counterfeited credit or debit cards. 720 ILCS 5/17-41 (West 2014). It sets forth two separate criminal offenses, which are subject to different sentencing ranges. The possession of an altered card is a Class 4 felony. *Id.* § 17-41(a)(i), (b). The possession of a counterfeit card is a Class 3 felony. *Id.* § 17-41(a)(ii), (b). Section 17-0.5 of the Code defines "altered credit card or debit card" and "counterfeit," stating as follows:

> " 'Altered credit card or debit card' means any instrument or device, whether known as a credit card or debit card, which has been changed in any respect by addition or deletion of any material, except for the signature by the person to whom the card is issued.
>
> * * *
>
> " 'Counterfeit' means to manufacture, produce or create, by any means, a credit card or debit card without the purported issuer's consent or authorization." 720 ILCS 5/17-0.5 (West 2014).

¶ 15     In this case, the State charged defendant with five counts of possession of an altered or counterfeit credit or debit card under section 17-41(a)(ii). Each count alleged that defendant knew the cards had been counterfeited. Accordingly, to prove defendant's guilt, the State was required to prove he, with the intent to defraud, possessed a counterfeited credit card knowing the card had been counterfeited. 720 ILCS 5/17-41(a)(ii). Additionally, because the legislature specifically defined the term "counterfeit," the State was required to prove the cards were counterfeit as that

term is defined by section 17-0.5. See *People v. Lozano*, 2017 IL App (1st) 142723, ¶ 43; *People v. Murray*, 2019 IL 123289, ¶ 24.

¶ 16    Viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in its favor, we conclude the State failed to prove the cards which defendant possessed were counterfeit as that term is defined by the Code. Here, the evidence showed that defendant had in his possession five gift cards that bore the name "Jasmine Williams." Three of the cards purported to be issued by Go Bank and two purported to be issued by Walmart, but the account numbers on those cards were issued by Fifth Third Bank. Purtell explained that the cards did not have sticker paper on them and did not appear to be printed by the laser printer recovered from the van. He also explained that the gift cards act like debit cards and typically have their numbers printed, rather than embossed, on them, and as such the printed numbers could be removed with alcohol and steel wool and then embossed with new numbers by equipment possessed by defendant. Purtell determined the account numbers encoded in the magnetic strips on each of the cards matched the account numbers imprinted on the front of the cards, and the account numbers on each card were different from one another. Purtell contacted an investigator at Fifth Third Bank and learned that the account numbers which were embedded into the cards were associated with five separate individuals, none of whom were defendant or Jasmine Williams. He explained that the encoder recovered from the van could be used to write information into the magnetic strip on the back of a card.

¶ 17    In short, this evidence showed the Go Bank and Walmart cards had been changed by the addition of the Fifth Third account numbers which had not been issued to defendant or Jasmine Williams and deletion of the information issued by Go Bank and Walmart. Thus, the State's

evidence established that the cards possessed by defendant were altered as that term is defined by the Code. See 720 ILCS 5/17-0.5 (West 2014) (An altered credit card or debit card is one "which has been changed in any respect by addition or deletion of any material."). However, the State did not charge defendant with possession of altered cards but rather possession of counterfeit cards, which is an entirely separate offense and required a showing that the cards were "manufacture[d], produce[d,] or create[d]," not changed by the addition or deletion of information. 720 ILCS 5/17-0.5 (West 2014) (defining "altered credit card or debit card" and "counterfeit"). Accordingly, his convictions cannot stand and, therefore, we must reverse them. See *People v. Durdin*, 312 Ill. App. 3d 4, 6-7 (2000) (reversing a conviction on a charge of delivery of cocaine within 1000 feet of a school where the evidence established the controlled substance was heroin and not cocaine).

¶ 18    The State argues that Purtell's testimony that the cards were "counterfeit" was sufficient to prove the cards were, in fact, counterfeit as that term is defined by the Code. We disagree.

¶ 19    Our supreme court has held conclusory testimony such as Purtell's here is insufficient to satisfy the State's burden to prove a statutory definition has been satisfied. See *People v. Murray*, 2019 IL 123289, ¶¶ 8, 26, 26 (finding detective's conclusory testimony that Latin Kings are a "street gang," was insufficient to satisfy the statutory definition of that term). Here, Purtell testified the cards recovered from defendant were "counterfeit" but failed to provide any testimony that the cards had been manufactured, produced, or created as opposed to changed by the addition and deletion of material. Indeed, as mentioned above Purtell's testimony established that the cards recovered from defendant were gift cards that had been altered by the addition of the Fifth Third Bank account numbers and deletion of the Go Bank and Walmart information. Accordingly, the State's evidence failed to prove the cards were counterfeit as that term is defined by the Code.

¶ 20    The State also argues that nothing in section 17-41 suggests that the two categories, *i.e.*, altered cards and counterfeit cards, "are mutually exclusive or that counterfeit cards must be 'produced from scratch' using blank cards." According to the State, because the statute states that counterfeit cards may be created by "any means," which would include altering legitimate cards to produce cards that qualify as counterfeit, its proof that the cards were altered also satisfied its burden to prove they were counterfeit. We disagree.

¶ 21    In construing a statute, we must give effect to every word, clause, and sentence and not construe them in a manner which would render them inoperative, superfluous, or insignificant. *People v. Spurlock*, 388 Ill. App. 3d 365, 371 (2009). Section 17-41 sets forth two separate offenses—altering or possessing an altered debit card or credit card and counterfeiting or possessing a counterfeit debit card or credit card—and provides that the two offenses are subject to different sentencing ranges. See 720 ILCS 5/17-41 (West 2014). To accept the State's argument would require us to disregard the distinction between "altered" and "counterfeit" cards and render the statutory definitions of those terms superfluous. Moreover, we find that construing the statutes as the State would have us would render the statutes unconstitutional under the proportionate penalties clause. Under the State's construction of the statute, *i.e.*, if altered cards are also counterfeit cards, identical conduct could be charged as a Class 3 or Class 4 felony. See *People v. Wright*, 2013 IL App (3d) 100522, ¶ 28 (proportionate-penalties clause violation occurs when identical conduct may be punished more severely in one instance than the other). We cannot accept such an interpretation. See *People v. Ortiz*, 235 Ill. 2d 319, 332 (2009) ("Statutes must be read in a manner that makes them constitutional.").

¶ 22    Defendant next contends, and the State concedes, his 2008 AUUW conviction in Cook County case No. 08 CR 15057 must be vacated pursuant to our supreme court's decisions in *People v. Burns*, 2015 IL 117387, and *In re N.G.*, 2018 IL 121939. We accept the State's concession.

¶ 23    In *People v. Burns*, 2015 IL 117387, ¶ 25, our supreme court clarified its earlier decision in *People v. Aguilar*, 2013 IL 112116, concluding that section 24-1.6(a)(1), (a)(3)(A) of the Criminal Code of 1963 (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2008)) was, without limitation, a facially unconstitutional flat ban on carrying ready-to-use guns outside the home. In *In re N.G.*, 2018 IL 121939, ¶ 57, our supreme court explained courts have a duty to vacate void convictions if the person subject to the void conviction raises his challenge through an appropriate pleading in a court possessing jurisdiction over the parties and the case, as a void order may be attacked at any time in any court.

¶ 24    Here, the record shows that, in 2008, defendant was convicted of AUUW under section 24-1.6(a)(1), (a)(3)(A) in Cook County case No. 08 CR 15057. As such, his conviction is void. *Burns*, 2015 IL 117387, ¶ 25; *In re N.G.*, 2018 IL 121939, ¶ 57. Accordingly, we vacate his 2008 conviction for AUUW in case No. 08 CR 15057.

¶ 25    For the reasons stated, we reverse the trial court's judgment. In addition, we vacate defendant's conviction for AUUW in Cook County case No. 08 CR 15057.

¶ 26    Reversed in part and vacated in part.